UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIQUAY DERRY, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:21-cv-474 |
| v. | |
| REDSTONE PRESBYTERIAN SENIORCARE, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A.   *Preliminary Statement*

1. The plaintiff Siquay Derry brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination, harassment and retaliation based upon her race. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B.   *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about November 4, 2020, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2020-02068. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated February 8, 2021.

5. This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. **<u>The parties</u>**

6. The plaintiff is an adult individual who resides at 79517 Reamer Street, Greensburg, Westmoreland County, PA 15601.

7. The defendant Redstone Presbyterian SeniorCare ("Redstone" or "the company") is an entity doing business in the Commonwealth of Pennsylvania. At all times material, the defendant had a place of business located at within this district, specifically 126 Mathews Street, Suite 2800, Greensburg, Westmoreland County, PA 15601.

8. The defendant is a facility that provides for senior community living as well as skilled and personal care.

9. At all times material, the defendant employed more than fifteen employees.

10. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D. **<u>Factual Background</u>**

11. The plaintiff was employed by Redstone from July 16, 2019 through August 11, 2020.

12. The plaintiff was employed as a Certified Nursing Assistant. Her responsibilities included assisting residents with personal care and activities of daily living.

13. The plaintiff performed all of the functions of her job in a competent fashion and was considered to be a good worker.

14. The plaintiff's immediate supervisor was Michelle Hoffman, Assistant Nursing Home Administrator.

15. While she was an employee, the plaintiff (African American) was treated differently than similarly situated Caucasian employees by her supervisor. This disparate treatment started soon after the plaintiff was hired. For example, the plaintiff accepted the job with the understanding that she would be able to attend Certified Nursing Classes to further her education and to enhance her income and professional opportunities. In early August 2019, the plaintiff approached Hoffman about getting scheduled for the classes that were supposed to start later that month. Hoffman told the plaintiff that she would not be able to take the class until October because the August class was full.

16. The plaintiff pointed out that Jackie Beltz, a co-worker (Caucasian) who was hired shortly after the plaintiff, was slotted for the August class, despite the fact that the plaintiff came on board first. The plaintiff told Hoffman that she felt that there was a discrepancy and that she hoped that Hoffman's decision was not based on a "black and white thing". Hoffman denied that she made the decision to schedule Beltz for the August class was based on Beltz' race, and, instead, tried to argue that Beltz was hired before the plaintiff not after.

17. Later that day, the plaintiff talked to Vicky Loucks, Vice President and Chief Operating Officer, about the situation. The plaintiff told Loucks that she was not comfortable with what Hoffman had said regarding the classes and she further told Loucks that she was hoping that Hoffman did not base her decision on race, but that she could not otherwise understand her reasoning. Loucks promised to look into the situation.

18. Towards the end of the day, Hoffman called the plaintiff and apologized for the "mishap" regarding scheduling. She told the plaintiff that, unfortunately, the August class was booked, but that Redstone would pay for the plaintiff to take the class elsewhere if she could find

one that started before the next scheduled one in October. The plaintiff found that the Redstone class in October would end sooner than any other class she could find.

19. In October, the plaintiff learned that the August class did have plenty of slots and that the plaintiff could have taken that one instead of waiting until the October class. Stacey Mantich, Nurse Aid Training Instructor, told the plaintiff that the August class only had four students instead of 10 – which was the minimum amount for a full roster. Mantich told the plaintiff that she had to get some people from the office to sit in the class so that she could meet the minimum attendance requirements to get the CPR instructor to do the class.

20. The plaintiff experienced repeated situations during which she felt that Hoffman was treating her differently because of her race and she brought these concerns to management's attention on at least two occasions, including with Loucks (as detailed above) and Shery Shevchik, Executive Director. Although both Loucks and Shevchik promised to look into the issue, it seemed that Hoffman's attitude towards the plaintiff did not change.

21. On February 22, 2020, the plaintiff called off work due to illness and left work early the next day for the same reason. The plaintiff was directed to send doctors' notes for these incidents to Hoffman, which she did.

22. In April 2020, Hoffman called the plaintiff into her office and gave her a verbal and written disciplinary notices due to call offs. However, two of those incidents were not subject to discipline because the plaintiff had provided doctors' notes. Hoffman refused to change the disciplinary notices, and, instead, told the plaintiff that if she called off one more time, or had 2 occurrences of being tardy, she would be terminated.

23. The plaintiff realized that Hoffman was attempting to set her up for termination. She tried to work with the Human Resources Department to get guidance on the discipline to

which she had been subjected, but the individuals she talked with could not provide any helpful information and did not change the disciplinary status.

24. On August 11, 2020, the plaintiff reported for her shift at 6:00 a.m. She was assigned to a floor that she did not regularly work. After waiting for about thirty minutes for the nurses to finish report, she knocked on the door of the nurse's station and said that she needed to check the hospice chart. She went into the nurse's station and started looking at the chart. One of the nurses started yelling at the claimant and told her to get out of the nurses station. The confrontation was very upsetting to the plaintiff (as well as Beltz, who witnessed much of what happened).

25. Beltz called Hoffman and explained to her what happened. The plaintiff got on the phone, still shaken by what had happened, and told her that she felt that she needed to go home because she was upset and uncomfortable working with those nurses for the day. Hoffman did not voice any objections or issues with this request; she said, that it was okay and to advise scheduling.

26. The plaintiff immediately called and talked to one of the schedulers. She asked the plaintiff if this had been cleared with Hoffman, and the plaintiff said yes. The plaintiff also pointed out that there would still be four aides on shift when she left, so that her departure would not cause a problem because there were enough aides to cover the shift. The scheduler told the plaintiff that was fine and that she would inform Hoffman that the plaintiff had left.

27. At approximately 9:00 a.m., Hoffman called the plaintiff. She started off by apologizing for what happened at work, stating "No one should be treated like this at work." Hoffman then said that she was "concerned" about the plaintiff's job because she had left work. Hoffman said that she would have to speak with HR to see if the plaintiff would be terminated.

28. The plaintiff was shocked. She reminded Hoffman that she had approved her going home and that there were enough aides to cover the shift. The plaintiff also said that she did not understand why HR would jump immediately to termination when the facility was short staffed and that she was always willing to pick up extra shifts during the pandemic in order to help out. Hoffman's response was "you're right; I know. I will make sure to discuss and bring everything to the attention of HR."

29. The company's policy did not call for immediate termination in cases such as this; instead, with a "written warning", the discipline called for a three day suspension before discharge.

30. The plaintiff called Hoffman back around 3:00 p.m. because she had not heard back yet and wanted to catch her before she left for the day. Hoffman advised the plaintiff that HR decided to terminate her position and that she was no longer employed by Redstone.

31. Later that month, the plaintiff contacted Judy Hamilton, HR Administrator, to ask her whether she would be receiving a letter from Redstone in the mail stating the reason for her termination. Hamilton told the plaintiff that Hoffman would be the one to get the plaintiff the letter. The plaintiff said to Hamilton, "since I have you on the phone, do you know the reason why I was terminated?" Hamilton said that it was because she had "assumed" that the reason for termination was because the plaintiff "walked off the job." The plaintiff explained that she was allowed to leave work and that Beltz was also given permission to leave that day but she wasn't fired. Hamilton said that she would have to talk to Hoffman about the situation.

32. The plaintiff was able to reach Hoffman. Hoffman said that she was not able to help with a termination letter and that the plaintiff needed to talk to Kathie Brean, Vice President of Human Resources.

33. The plaintiff subsequently reached Brean. Brean said that she could not give the plaintiff a termination letter because the plaintiff had not been terminated. Brean told the plaintiff that her records indicated that the plaintiff had "voluntarily resigned". The plaintiff was in shock. She told Brean that she didn't quit and that Hoffman had fired her.

34. The changing reasons given for the plaintiff's termination were nothing more than pretexts and were contrary to the company's own disciplinary policies. The real reason that she was fired was because of her race. Further, similarly situated employees were permitted to leave during their shift, leaving the floor short-staffed, and they were not disciplined or terminated.

35. Further, the plaintiff was terminated in retaliation for bringing issues involving her discriminatory treatment to management.

## FIRST CAUSE OF ACTION

36. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

37. The plaintiff is African American and thus is protected against discrimination, harassment and retaliation on the basis of her race pursuant to Title VII.

38. The plaintiff was qualified for her position.

39. Despite his qualifications, the plaintiff was terminated. The reasons given for her discharge were a pretext.

40. The defendant's discharge of the plaintiff was because of her race in violation of Title VII.

41. Further, the defendant retaliated against the plaintiff because the she brought issues regarding discrimination to the attention of management.

42. The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of race discrimination.

## SECOND CAUSE OF ACTION

43. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

44. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination, harassment and retaliation under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306
2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated: April 12, 2021